UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIP A. DOWNEY, Esq.<br><br>Plaintiffs,<br><br>vs.<br><br>FIRST INDEMNITY INSURANCE, FIRST INDEMNITY INSURANCE AGENCY, INC., FIRST INDEMNITY INSURANCE SERVICES, INC., FIRST INDEMNITY INSURANCE GROUP, ANDREW BIGGIO, and JOHN M. BIGGIO, FIRST MERCURY INSURANCE COMPANY, STATE NATIONAL INSURANCE COMPANY<br><br>Defendants. | Case No. |

## COMPLAINT

**AND NOW** comes the Plaintiff, Philip A. Downey, *pro se*, who avers as follows against the above named Defendants, First Indemnity Insurance, First Indemnity Insurance Agency, Inc., First Indemnity Insurance Services, Inc., First Indemnity Insurance Group, Andrew Biggio, John Biggio and First Mercury Insurance Company, and State National Insurance Company (hereinafter collectively referred to as "Defendants"):

### JURISDICTION AND VENUE

1. Jurisdiction is founded upon 28 U.S.C. §1332 due to diversity of citizenship because the Plaintiff is a citizen of the Commonwealth of Pennsylvania and the Defendants are citizens of the Commonwealth of Massachusetts, the States

1

of New York, Michigan and Texas. The amount in controversy exceeds $75,000.00.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) as substantially all of the events that give rise to the claims in this action occurred within this District.

## PARTIES

3. Plaintiff, Philip A. Downey (hereinafter "Downey"), is the Principal of The Downey Law Firm, LLC. Downey is an attorney licensed to practice law in the Commonwealth of Pennsylvania and resides in Unionville, Chester County, Pennsylvania.

4. Defendant, FIRST INDEMNITY INSURANCE, is a privately held corporation organized under the laws of the Commonwealth of Massachusetts, with its principal place of business located at Lawyers Weekly Building, 41 West Street. 5th Floor, Boston, MA 02011, and may be served through First Indemnity Insurance Services, Inc., 87 Oxford Street, Lynn, Massachusetts.

6. Defendant, FIRST INDEMNITY INSURANCE AGENCY, INC., is a privately held corporation organized under the laws of the Commonwealth of Massachusetts, with its principal place of business located at 87 Oxford Street, Lynn Massachusetts.

7. Defendant, FIRST INDEMNITY INSURANCE SERVICES, INC., is a privately held corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business located at 87 Oxford Street, Lynn Massachusetts, is registered to conduct business in Pennsylvania and is licensed to sell insurance in Pennsylvania with the Pennsylvania Department of Insurance, License number 55901. FIRST INDEMNITY INSURANCE SERVICES, INC., may be served through its authorized agent for service, CT Corp. Systems, 116 Pine Street, Suite 320, Harrisburg, Pa 17101.

8. Defendant, FIRST INDEMNITY INSURANCE GROUP., is a privately held corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business located at 87 Oxford Street, Lynn Massachusetts. Upon information and belief, First Indemnity Insurance Group is a successor corporation to First Indemnity Insurance, First Indemnity Insurance Services, Inc., and First Indemnity Insurance Agency, Inc.

9. Defendant, ANDREW BIGGIO, is an individual and upon information and believe is an owner or co-owner of First Indemnity Insurance, First Indemnity Insurance Services, Inc., First Indemnity Insurance Agency, Inc., and First Indemnity Insurance Group. Defendant, Andrew Biggio, is also an insurance agent employed by First Indemnity Insurance Group, First Indemnity Insurance Agency, Inc., First Indemnity Insurance Services, Inc.., and First Indemnity is engaged, *inter alia*, in the procurement of professional liability policies for attorneys, including having acted as an agent for Downey in procuring legal malpractice insurance on the part plaintiff, Philip A. Downey.

10. Defendant, John Biggio, is an individual and upon information and believe is an owner or co-owner of First Indemnity Insurance, First Indemnity Insurance Services, Inc., First Indemnity Insurance Agency, Inc., and First Indemnity Insurance Group. Defendant, John Biggio, is also an insurance agent employed by First Indemnity Insurance Group, First Indemnity Insurance Agency, Inc., First Indemnity Insurance Services, Inc., and First Indemnity Insurance Group, and is engaged, *inter alia*, in the procurement of professional liability policies for attorneys, including having acted as an agent for Downey in procuring legal malpractice insurance on the part plaintiff, Philip A. Downey. Defendants John Biggio, Andrew Biggio, and all previously referenced First Indemnity entities are hereby collectively referred to as "First Indemnity Defendants".

11. Downey is informed and believes, and thereupon alleges that defendant, FIRST MERCURY INSURANCE COMPANY (hereinafter "Mercury") is organized under the laws of the State of Illinois with its principal place of business located in Michigan. Mercury is vicariously liable to Downey for the negligent/fraudulent acts of its agents, the above named co defendants in this action.

12. Downey is informed and believes, and thereupon alleges that defendant, State National Insurance Company (hereinafter "State") is has its principal place of business located in Bedford, Texas. State is vicariously liable to Downey for the negligent/fraudulent acts of its agents, the First Indemnity Defendants in this action.

# FACTS

## A. Legal Malpractice Suit and Gap in Coverage

13. On or about July 6, 2009, a legal malpractice complaint was filed against Downey by Nicholas Knopick alleging, *inter alia*, that Downey had committed malpractice on July 5, 2007 by failing to file a claim in tort for legal malpractice within the 2 year statute of limitations, against his former attorneys, John Connelly and Susan Kadel.[1]

14. In or about July/August, 2009, Downey contacted the Defendants, to advise them that he was being sued. Defendants, through their agents and/or employees advised Downey to put Mercury on notice of the claim.

15. On or about August 3rd, 2009, Downey spoke with David Afton, a Senior Claims Specialist with First Mercury Insurance and advised First Mercury of the lawsuit against him.

16. On or about August 11th, 2009, Downey received a letter from First Mercury declining coverage. Prior to receiving this letter Downey did not know nor could he reasonably had known that Defendants had left him with a gap in coverage between his previous claims made policy with Philadelphia Insurance Company and his current claims made policy with First Mercury Insurance. Mercury denial of Coverage letter, attached hereto as Exhibit "B".

17. Having been denied coverage and refusing to believe that he may have been left with a gap in coverage by the Defendants, on September 25th, 2009, Downey contacted Philadelphia Insurance to try to obtain coverage for the law suit. *September 25th & 26th, 2007 e-mail*, attached hereto as Exhibit "C".

18. It was only after being denied coverage by Philadelphia Insurance Company, in or about December 31st, 2009, that Downey realized that Defendants had failed to procure adequate legal malpractice coverage for him and in fact had left him with a gap in coverage. *Philadelphia Insurance Denial Letter*, attached hereto as Exhibit "D".

---

[1] Downey denies these allegations and, moreover, has argued that he is not the proximate cause of any damages the plaintiff may have suffered, as at the time Plaintiff sued Downey, Plaintiff still had a viable cause for legal malpractice in breach of contract against John Connelly and Susan Kadel, and that Pennsylvania allows for the same damages (except punitive) as a claim for legal malpractice in tort.

## B. <u>Representations of Defendants</u>

19. In or about May, 2007, Downey was solicited by Defendants with regard to his legal malpractice insurance needs. Solicitation, attached here to as Exhibit "E".

20. The Solicitation stated that the First Indemnity Defendants:

> "Gives you excellent service and competitive prices because your agent can access the insurance from more than one insurance company."

> "Unlike other agents is not beholden to any one company."

> "Is a value hunter who looks after your pocket book in the best combination of price **COVERAGE** and service (**EMPHASIS ADDED**)

> "Serving you is our most important concern."

> "At First Indemnity we will put together a personalized program that take into consideration your exposures and your budget."

> "First Indemnity is committed to providing coverage that will focus on identifying malpractice exposures inherent in the practice of law."

See, Exhibit E, *supra*.

21. Downey justifiably relied upon the above representations in choosing to contact the First Indemnity defendants and retain them as his insurance brokers.

22. Upon information and belief, the First Indemnity Defendants were not independent in as much as they had a reciprocal arrangement with State National companies to channel perspective legal malpractice policy applicants to State National and/or First Indemnity. Evidence of this can be found in the two insurance applications filled out by Downey, both of which bore the imprimatur of State National Insurance Company and/or State & Mercury, but neither of which referenced First Indemnity. Downey's insurance applications attached as Exhibits "F" & "G". Thus, the First Indemnity solicitation constituted a false and misleading statement on the part of the First Indemnity Defendants made with the intent to mislead prospective legal malpractice policy applicants into believing that

First Indemnity would scour the market place seeking proper coverage for applicants when in fact First Indemnity was bound to steer legal malpractice policy applicants to State and/or Mercury and never searched for a proper policy for Downey.

23. Further evidence of this false and deceptive trade practice can be found in a recent letter received by Downey from the First Indemnity Defendants informing Downey that though State National would no longer write policies for clients solicited by the First Indemnity Defendants, the First Indemnity Defendants had found a new carrier to which it could steer all of it's clients. *Notice,* attached hereto as Exhibit "H".

24. After having received the Solicitation, Exhibit E, supra, Downey called the First Indemnity Defendants to discuss his legal malpractice insurance needs.

25. On May 10, 2007, an employee and/or agent of the First Indemnity Defendants, Marlon Yu, sent an e-mail to Downey, attached to which was a malpractice policy questionnaire bearing the names of First Mercury Insurance Company and State National Insurance Company. *See,* Exhibit F, supra..

26. In response to that solicitation and a conversation with Marlon Yu, Downey filled out a legal malpractice insurance application, which was faxed to Marlon Yu at 800/797-1897 on July 27, 2007. *Id.*

27. On or about September, 2007, Downey telephoned the First Indemnity Defendants to inquire what had ever become of his malpractice insurance application. During this call, Downey, for the first time, spoke with Defendant, Andrew Biggio (hereinafter "Andrew").

28. During this call Downey and Andrew discussed Downey's insurance needs and Downey's desire to be fully covered with no gaps in coverage. Andrew assured Downey that he was an expert and that he would see to it that Downey's insurance needs were met and that Downey would be fully covered. At the conclusion of the call Andrew promised to send Downey another legal malpractice insurance application and assured him that he would see to it that there would be no gap in coverage between his old and new policies, if he was approved.

29. Downey received an application from Andrew bearing the name of State National Insurance. Downey completed the application and faxed the application back to the Indemnity Andrew. *See,* Exhibit "G", supra.

6

30. In response to both applications, Downey made reference that his previous malpractice policy was with the Philadelphia Insurance Company and partly would expire August 18, 2007 (this did not include the tail period coverage of 60 days, which upon information and belief is standard coverage for claims made policies (see, Exhibit d, supra)). *Id.*, at pg. 13 of 26.

31. On October 6, 2007, Downey received letters from both Defendant, John Biggio (hereinafter "John" (written on letterhead of Defendant, First Indemnity Insurance Agency, Inc. ) and Andrew, informing Downey that he had been approved for a "broad coverage" policy in which, *inter alia*, Downey would be covered for "Predecessor Firm". *October 6th e-mail,* attached hereto as Exhibit "I".

32. The October 6th e-mail also made the following representation, upon which Downey reasonably relied:

### "PRIOR ACTS COVERAGE INFORMATION

The claims made lawyers professional liability insurance policy only covers claims resulting from acts, errors, or omissions by an insured in the performance of professional services as a lawyer, provided that the claim is first made against you and reported during the policy term. The act, error, or omission alleged in the claim must have taken place during the policy period or subsequent to the prior acts date stated as an endorsement to the policy. This means that claims from acts, errors or omissions committed before the "Prior Acts Date" are not covered by this policy. **If no prior acts exclusion is attached to the policy, "Full Prior Acts" coverage not limited by a date, is provided for acts, errors or omissions committed by the insured before the policy period."**

*Id.* (**emphasis added**). Further, this letter made no reference to The Mercury policy leaving Downey with a gap in coverage. *See,* Exhibit I, supra.

33. On October 24th, 2007, Andrew mailed a letter to Downey enclosing his policy with State/Mercury. The cover letter made no reference to a prior acts exclusion date and a Prior Acts Exclusion was not incorporated into the policy issued to Downey. Indeed, the cover letter put Downey at ease, as it only made reference to the policy period. Downey, justifiably relied upon both John's letter of October 6th, 2007 (supra) and Andrew's letter of October 24th, 2007 and had no inkling that

7

he had been left by the Defendants with a gap in coverage. *October 24th letter and Policy* attached hereto as Exhibit "J".

34. Downey justifiably and reasonably relied upon both the language of the Policy concerning "Prior Acts Coverage Information" and the assurances of Andrew, who Downey relied upon as his broker/insurance expert to obtain adequate coverage for Downey, free of coverage gaps.

35. Upon information and belief, Andrew and John Biggio and the First Indemnity defendants deliberately failed to provide Downey with the coverage he needed in order that they could quote Downey a low policy rate for a claims made policy and thereby win his business. Had they made certain not to leave a gap in coverage the quoted rate, would have been higher.

36. Upon information and belief, The First Indemnity Defendants, at all times material to this complaint, only sold legal malpractice policies on behalf of State National and First Mercury and likewise, the First Indemnity Defendants were the exclusive brokers for State National and First Mercury Defendants within the Commonwealth of Pennsylvania.

37. Indeed, the website for State lists, First Indemnity as its point of contact in the retail insurance market place.

**"State National Insurance Company**
**Contact**☐Andrew A. Biggio☐First Indemnity Insurance Agency, Inc.☐The Equitable Co-operative Bank Building☐87 Oxford St.☐Lynn, MA 01901☐Phone: 781/581-2500☐Email: Andrew A. Biggio

**States Where the Carrier Writes:**☐All States, Puerto Rico and the Virgin Islands

**Do you write professional insurance for judges:**☐No

**# of Years Writing Legal Insurance:**☐8 Years

**Restrictions:**☐None

**Size Guidelines:**☐Writes firms 1-100

**Highest Available Limits of Liability:**☐$10 Million

**Deductible:**☐$1000 Aggregate

8

**Limits in Excess of Deductible:** ☐Up to $10 Million

**Defense Costs Included in Limits:** ☐Yes, with optional defense outside limits

**Insured's Activities for Entity Not Covered by Policy:** ☐Excludes activities as officer, director, etc. of other entity, except bar organization; activities as partner, officer, etc. of other law firm, if there is other valid insurance, service to enterprise owened in whold or in part by insured or family member.

**Securities Exclusion:** ☐No

**Defense for Malicious Prosecution, Abuse of Process or Defamation:** ☐Yes, excludes coverage for claims arising from "dishonest" or "malicious" wrongful act, but coverage not excluded if the Insured is "not so adjudged".

**Prior Acts Coverage:** ☐Yes, provided that the insured did not notify any prior insurer of such act and had no basis to believe, prior to the initial policy period with the Insurer, that any such act might reasonably have been expected to be the basis of a claim.

**Input Re: Selection of Counsel:** ☐Yes

**Consent to Settle Provision:** ☐Yes, provided insured's consent is not unreasonable withheld. If insured refuses settlement recommended by insurer, insurer's liability limited to recommended settlement amount up to limits.

**OPTIONS FOR SCOPE OF COVERAGE** ☐Coverage Available for:

**Partners Leaving:** Yes

**Employed Attorneys Leaving:** Yes

**Part-time Legal Work:** Yes

**Non-practicing Lawyers:** Yes, with conditions

**Government:** No

**In-house:** No

**Updated: 06/04/2009"**

Copied and pasted from State website.

9

38. Upon information and belief, at all times relative to this complaint, Mercury was a wholly owned subsidiary of State, and/or an insurance division of State.

39. Relying upon the representations of the First Indemnity Defendants, Downey submitted his claim to First Mercury Insurance Company; however, despite the language concerning predecessor firm coverage and the absence of a Prior Acts Exclusion attached to the First Mercury Policy, First Mercury nevertheless denied all coverage to Downey, including legal representation.

40. The First Indemnity Defendants owed a fiduciary duty to Downey to match him with appropriate insurance coverage in light of the information made known to them by Downey.

41. As a result of Defendants having failed to provide Downey with proper coverage and/or First Mercury having improperly denied coverage, Downey has been forced to expend, not including the cost of his own time over $200,000 dollars of his own money in attorneys' fees in his own defense and potentially faces millions of dollars in uninsured damages. This exposure is a direct result of the First Indemnity Defendants breach of their fiduciary duty to Downey not to leave him with gaps in insurance coverage.

**COUNT I
BREACH OF CONTRACT**
(Downey v. First Indemnity Defendants)

42. The above paragraphs are incorporated herein as though set forth at length.

43. The conduct of the First Indemnity Defendants described herein constituted repeated breaches of their implied agreement to provide Plaintiff with professional services consistent with those expected of licensed insurance brokers at large and to follow the specific instructions of the Plaintiff.

44. As a direct and foreseeable consequence of the First Indemnity Defendants breach of the implied service contract, Plaintiff has sustained the damages described above.

    WHEREFORE, Plaintiff Philip A. Downey demands judgment against the First Indemnity Defendants jointly and severally or individually for compensatory damages in an amount in excess of $200,000, exclusive of interest and costs, as

well as other consequential and incidental costs.

## COUNT II
## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICE ACT CONSUMER PROTECTION LAW
(Downey v. All Defendants)

45. Plaintiff hereby incorporates by reference the above paragraphs of its Complaint as is same were fully set forth at length herein.

46. Defendants have committed unfair business practices prohibited by the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. § 201-1 et seq., and the Pennsylvania Unfair Insurance Practices Act. 40 Pa.C.S.A. § 1171.1 et seq.

47. Defendants' actions in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law and Pennsylvania Unfair Insurance Practices Act, include, but are not limited to: directly misrepresenting, or conspiring to, misrepresent pertinent facts or policy provisions relating to coverage at issue; engaging in a pattern and practice of attempting to confuse and mislead Plaintiff as to the coverage being provided; the commission of malfeasance.

48. As a result of Defendants' wrongful actions, Plaintiff has not been provided indemnity or reimbursement to which it is entitled, and has sustained damages therefrom in the amount of $200,000 in defense costs and faces exposure of potentially millions in uninsured losses to due to the deliberate malfeasance of the defendants.

  WHEREFORE, Downey demands treble damages and attorneys fees and costs, for Defendants knowing and deliberate conduct intended to mislead and confuse policy applicants.

## COUNT III
## VICARIOUS LIABILITY AND DIRECT NEGLIGENCE
(Plaintiff v. State & Mercury)

49. Plaintiffs allege and incorporate by reference the allegations contained in all of the above paragraphs, as fully as though the same were set forth herein at length.

50. Defendants State National and First Mercury are vicariously liable for the negligent acts, commissions, or omissions of its employee and/or agent, The First Indemnity defendants, who at all times relevant hereto acting on behalf of defendant State and Mercury as their agent the doctrines of respondeat superior agency and ostensible agency.

51. At all relevant times, the First Indemnity Defendants had a duty to act in accordance with the standards of care required of licensed insurance brokers

52. This duty required the First Indemnity Defendants to provide Downey with adequate insurance free of gaps in coverage.

53. While acting within the course and scope of its Agency, the First Indemnity Defendants breached their contractual obligations and professional duties to Downey duty by deliberately not binding malpractice insurance for Downey free of gaps in coverage.

54. State & Mercury breached their duty to Downey, by:

    a. Failing to properly train, test, supervise and monitor the acts of the First Indemnity Defendants; and/or
    b. Failing to review on a continuous basis the competence and/or qualifications of the First Indemnity Defendants
    c. Failing to use due care in the selection of their agents; and/or
    d. In such other ways as may be proven by the evidence.

55. Plaintiffs' injuries were the direct, legal and proximate result of defendant Medical Solutions' vicarious liability.

56. As a result of the injury sustained by Plaintiff due to defendant State and Mercury's ' vicarious fault, Plaintiffs has suffered and/or will continue to suffer the following damages:
    a. Legal expenses;

b. Possibly uninsured damages in the millions of dollars.

WHEREFORE, Downey demands judgment against defendants, State and Mercury in an amount exceeding $200,000 dollars and seeks that State and Mercury be found to be vicariously liable for the professional malpractice of their agent, The First Indemnity Defendants.

Respectfully submitted,

The Downey Law Firm, LLC

By: _____
Philip A. Downey
Pro Se