## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILIP A. DOWNEY, ESQ. | |
| **Plaintiff,** | |
| v. | |
| FIRST INDEMNITY INSURANCE, FIRST INDEMNITY INSURANCE AGENCY, INC., FIRST INDEMNITY INSURANCE SERVICES, INC., FIRST INDEMNITY INSURANCE GROUP, ANDREW BIGGIO, and JOHN M. BIGGIO, FIRST MERCURY INSURANCE COMPANY, STATE NATIONAL INSURANCE COMPANY, | C.A. No.: 2:13-CV-04545-MSG |
| **Defendants.** | |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS, FIRST INDEMNITY INSURANCE, FIRST INDEMNITY INSURANCE AGENCY, INC., FIRST INDEMNITY INSURANCE SERVICES, INC., FIRST INDEMNITY INSURANCE GROUP, ANDREW BIGGIO, and JOHN M. BIGGIO**

1

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.  The Statute of Limitations Has Run, Thus Barring Downey's Claim . . . . . .7

    1.  *Applicable Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    2.  *Downey's Claim Accrued When he Received Professional Malpractice Policy SLA0006980 on or around October 24, 2007* . . . . . . . . . . . . . . . . . . . . . . . . .8

    3.  *Downey Renewed His Professional Malpractice Insurance in 2008 and Obtained the Same Coverage With the Same Terms, Including the Same Retroactive Date of October 1, 2007.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    4.  *Downey Failed to File Suit Within the Four-Year Statute of Limitations* . . . . . . 13

    B.  **Downey Requested a Policy Wherein Wrongful Acts Prior to October 1, 2007 Were Not Covered, and Repeatedly Signed Applications for Renewal Policies Acknowledging that He Was Not Covered for Wrongful Acts Prior to October 1, 2007.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF AUTHORITIES

**Cases**

*Barnes v. McKellar*, 434 Pa. Super. 597 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Brawner v. Education Management Co.*, 513 Fed. Appx. 148 (3d Cir. 2013) . . . . . . . .14

*Burnside v. Abbott Labs*, 351 Pa. Super. 264 (1985) . . . . . . . . . . . . . . . . . . . . . 14, 15

*Cooper v. Sirota*, 37 Fed. Appx. 43 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . .13, 15

*Crouse v. Cyclops Industries*, 560 Pa. 394 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Dalrymple v. Brown*, 549 Pa. 217 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Darbouze v. Chevron Corp.*, 1998 WL 512941 (E.D. Pa. 1998) . . . . . . . . . . . . . . . . 8

*Fine v. Checcio*, 582 Pa. 253 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14, 15

*Foukes v. Shoemaker*, 443 Pa. Super. 343 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Hionis v. Northern Mutual Ins. Co.*, 230 Pa. Super. 511 (1974) . . . . . . . . . . . . . . . . . .8

*In re TMI*, 89 F.3d 1106 (3d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ingenito v. AC&S, Inc.*, 633 A.2d 1172 (Pa. Super. 1993). . . . . . . . . . . . . . . . . .7, 14, 15

*Kilmore v. Erie Ins. Co.*, 407 Pa. Super. 245 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) . . . . . . . . . . . .7

*Simon Wrecking Co., Inc. v. AIU Ins. Co.*, 350 F. Supp. 2d 624 (E.D. Pa. 2004) . . . . . . 7

*Speicher v. Dalkon Shield Claimants Trust*, 943 F. Supp. 554 (E.D. Pa. 1996) . . . . . . . 14

*Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300 (1983) . . . . 8, 11

*Wible v. Apanowicz*, 306 Pa. Super. 262 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

**Statutes**

Pa. Cons. Stat. § 5525(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

Pa. Cons. Stat. § 5525(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Other Authorities**

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

## I.   INTRODUCTION

In this matter, Plaintiff Philip A. Downey, Esq., (hereinafter "Downey" or "Plaintiff")
seeks to hold Defendants First Indemnity Insurance, First Indemnity Insurance Agency, Inc.,
First Indemnity Insurance Services, Inc., First Indemnity Insurance Group, Andrew Biggio and
John Biggio (collectively, "First Indemnity and Biggio Defendants") liable for breach of contract
for procuring professional liability insurance in 2007 that supposedly did not meet Downey's
stated expectations by not covering him for his wrongful acts prior to October 1, 2007.  For two
distinct reasons, the First Indemnity and Biggio Defendants are entitled to entry of judgment as a
matter of law pursuant to Fed. R. Civ. P. 56.   First, the statute of limitations has run on
Downey's claim for breach of contract.  Thus, he may not recover from the First Indemnity or
Biggio Defendants.   Second, the terms of the professional liability insurance policy the First
Indemnity and Biggio Defendants procured in all respects satisfied Downey's stated needs, and
Downey himself acknowledged in writing his understanding that the policy did not apply to
wrongful acts prior to October 1, 2007.  Thus, entry of summary judgment is appropriate.

## II.   FACTUAL BACKGROUND

The First Indemnity and Biggio Defendants submit an accompanying Statement of
Undisputed Material Facts, attached hereto.  For ease of reference, the First Indemnity and
Biggio Defendants summarize the pertinent undisputed facts as follows.  Plaintiff Philip A.
Downey ("Downey") originally filed this action asserting claims against the First Indemnity and
Biggio Defendants in the Eastern District of Pennsylvania on August 7, 2013.  SOF 1.   Downey
later retained counsel and filed an Amended Complaint on February 7, 2014.  SOF 2.  Downey's
Amended Complaint asserts a single cause of action against the First Indemnity and Biggio
Defendants, that of breach of contract, on the grounds that the First Indemnity and Biggio

1018108v.1

Defendants failed to procure professional liability insurance coverage for Downey that, *inter alia*, covered Downey's wrongful acts that occurred prior to October 1, 2007. SOF 3.

In his amended complaint, Downey alleged that he contacted the First Indemnity Defendants at some unspecified time after May 2007 to discuss his legal malpractice needs, and subsequently received an email from an agent of the First Indemnity Defendants containing a malpractice policy questionnaire bearing the names of First Mercury Insurance Co. and State National Insurance Co. SOF 4. Downey alleged that he then faxed his completed professional liability insurance application to Marlon Yu, allegedly an employee of the First Indemnity/Biggio Defendants, on or about July 27, 2007. SOF 5. Downey alleged that after faxing his application to Yu, he followed up by telephone in September 2007 and spoke with Andrew Biggio, who sent Downey another professional liability insurance application to fill out bearing the name State National Insurance. SOF 6. In that application, which Downey signed on September 21, 2007, the "Representations" section indicates, "I/We affirm that the information contained here and in any addendum is true and to the best of my/our knowledge and that it shall be the basis of the policy of insurance and deemed incorporated therein, should the Company evidence its acceptance of this application by issuance of a policy." SOF 7. In the signed application, the Representations section goes on to state, "I understand that this application forms the basis of the contract of insurance, if the Company offers coverage and we accept the Company's offer." SOF 8.

On September 22, 2007, Downey faxed his handwritten application to the attention of Andrew Biggio. SOF 9. After receiving Downey's handwritten application, an agent of First Indemnity then entered the information into its system, including First Indemnity's understanding that Downey requested that the policy would cover wrongful acts from October 1,

2007 going forward, *i.e.*, that it would not cover wrongful acts prior to October 1, 2007. SOF 10. On October 6, 2007, Downey received a fax from First Indemnity Insurance Agency, Inc., enclosing a quotation for a professional liability insurance policy through State National Insurance Company. SOF 11. The quotation itself was signed by Andrew Biggio. SOF 12. That quotation clearly states on the front page under "Conditions," that the professional liability insurance policy is a "Claims Made Policy Covering 1 Attorney. Retro-Active Date 10/1/2007." SOF 13. That quotation also states that the "Automatic Broad Coverage Features" of the proposal included the terms included in the CVXLAW 101 Policy Form. SOF 14. The same quotation included an invitation from Andrew Biggio for Downey to contact him should he have any questions. SOF 15.

On October 24, 2007, Andrew Biggio mailed the completed Lawyer's Professional Liability Policy No. SLA0006980 to Downey, issued through State National Insurance Company and effective October 1, 2007. SOF 16. In his cover letter, Andrew Biggio stated that "[w]e trust that you will find all in order," and extended another invitation to Downey to contact him if he had any questions. SOF 17.

Policy SLA0006980 contains many express, unambiguous statements indicating that Downey was not covered for wrongful acts prior to the retroactive date of October 1, 2007. One section of the policy entitled "Retroactive Date Endorsement," incorporated into the policy in the declarations page, provides: "In consideration of the premium paid, it is agreed that the policy is amended as follows: This policy does not apply to any CLAIMS or CLAIMS arising from, attributable, or based upon any WRONGFUL ACT(S) committed or alleged to have been committed by the following lawyers prior to the corresponding retroactive date. . . . Philip A. Downey, [retroactive date:] 10/01/2007." SOF 30.

4

Additionally, several statements in the body of the policy itself provide that the policy does not apply to wrongful acts committed prior to October 1, 2007.   Page 1 of CVX-LAW-101 states in capital letters, "The coverage provided by this policy is limited to only those claims which arise from professional liability services rendered after the retroactive date stated in the declarations and which are first made against the insured and reported to us during the policy period or any applicable extended reporting period." SOF 23.   That page further states in capital letters, "Please review the policy carefully.   This policy contains important exclusions and conditions. . . . Please discuss any questions concerning the coverage with your insurance agent or broker."   SOF 24.   Page 3 of CVX-LAW-101 (first full paragraph) again informs that "[v]arious provisions in this policy restrict coverage.   Read the entire policy carefully to determine rights, duties and what is and is not covered."   SOF 25.   Section II of the policy, entitled CLAIMS TO WHICH THIS POLICY APPLIES, located on page 3 of CVX-LAW-101, was modified by the terms of CVX-LAW-243 (12/2004) (included with the original policy) to provide, "Subject to the terms of this policy, this insurance applies to a claim **only if**: 1. The professional services giving rise to such claim or circumstance which could give rise to a claim are rendered . . . (d) **on or after the retroactive date specified** for the named insured and before the end of the policy period[.]"   SOF 26-27.   Further, Section IX of the policy, entitled EXCLUSIONS, provides that "This policy does not apply, and the Company shall not be obligated to defend, pay on behalf of or indemnify the insured, with respect to . . . any claim or damages . . . arising out of professional services rendered prior to the retroactive date specified for the named insured." SOF 28.   In 2008, Downey renewed his professional liability policy with State National/First Mercury for another year.  SOF 31-35.   The renewal application that Downey signed indicated that the renewed policy would have the same terms as the original

policy. SOF 32-33. Namely, the renewal application provided that "your policy will be the same as expiring," and "retroactive date same as expiring policy." SOF 32-33. The renewal policy—being identical to the initial policy—also identified the October 1, 2007 retroactive date and its import several times. SOF 36-40.

On or about July 6, 2009, Nicholas Knopick sued Downey for legal malpractice, alleging, *inter alia*, that Downey committed legal malpractice on or about July 5, 2007 by failing to timely file a tort claim for legal malpractice within the applicable statute of limitations. SOF 41. Downey alleged that he put First Mercury on notice of the claim on or about August 3, 2009. SOF 42. Downey alleged that on or about August 11, 2009, he received a letter from First Mercury disclaiming coverage because the wrongful acts occurred prior to the expressly indicated Retroactive Date on the professional liability insurance policy. SOF 43. Downey alleged that he assumed that his professional liability policy that the First Indemnity and Biggio Defendants procured for him would cover wrongful acts in the time period pertinent to Knopick's allegations, yet despite that assumption, coverage was disclaimed because the wrongful acts occurred prior to the October 1, 2007 retroactive date. SOF 44. Nearly six years after receiving the first professional liability policy with the clearly indicated retroactive date of October 1, 2007, Downey filed the instant suit against the First Indemnity and Biggio Defendants for breach of contract for allegedly failing to obtain professional liability insurance coverage pursuant to Downey's stated needs. SOF 1, 3, 16. Downey later acknowledged in writing that his professional liability policy did not cover wrongful acts prior to October 1, 2007. SOF 45-48.

6

### III.   ARGUMENT

### A.   The Statute of Limitations Has Run, Thus Barring Downey's Claims.

1. *Applicable Law.*

To prevail on a motion for summary judgment, the moving party must establish "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).   On a motion for summary judgment, the court views all evidence submitted in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).   Summary judgment can be entered in favor of a defendant where a plaintiff's cause of action is barred by the statute of limitations. *Ingenito v. AC & S, Inc.,* 633 A.2d 1172, 1174 (Pa. Super. 1993), citing *Wible v. Apanowicz,* 306 Pa. Super. 262, 452 A.2d 545 (1982).

The only claim Downey makes against the First Indemnity and Biggio Defendants is a claim for breach of contract for a supposed breach of an oral agreement. *See* Doc. 40 at pg. 9, Count I.   Pursuant to 42 Pa. Cons. Stat. § 5525(a)(3), "[a]n action upon an express contract not founded upon an instrument in writing" must be commenced "within four years."[1]   Claims based on promissory estoppel and quantum meruit are likewise governed by a four-year statute of limitations. *See Crouse v. Cyclops Industries*, 560 Pa. 394, 403 (2000) (promissory estoppel); *Foukes v. Shoemaker*, 443 Pa. Super. 343, 350 (1995) (quantum meruit).   In Pennsylvania, a cause of action in contract accrues at the time of breach. *Simon Wrecking Co., Inc. v. AIU Ins. Co.*, 350 F. Supp. 2d 624, 634 (E.D. Pa. 2004).   A breach of contract is "the non-performance of any contractual duty of immediate performance." *Id.*, citing *Barnes v. McKellar*, 434 Pa. Super. 597, 608 (1994).   A plaintiff has the duty "to use all reasonable diligence to properly inform

---

[1] An action founded on an express contract founded upon a writing is similarly governed by a four-year statute of limitations. *See* Pa. Cons. Stat. § 5525(8).

himself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period." *Darbouze v. Chevron Corp.*, 1998 WL 512941, at *12 (E.D. Pa. 1998). Once the defense of statute of limitations has been raised, "the plaintiff bears the burden of proving he filed his claims within the applicable statute of limitations." *In re TMI*, 89 F.3d 1106, 1116 (3d Cir. 1996).

> 2. *Downey's Claim Accrued When he Received Professional Malpractice Policy SLA0006980 on or around October 24, 2007.*

Even if Downey is correct that he asked the First Indemnity and/or Biggio Defendants to procure a professional liability insurance policy with terms other than what he ultimately received—which the First Indemnity and Biggio Defendants deny—any claim for breach of contract accrued when Downey received Policy SLA0006980 on or about October 24, 2007. At that time, Andrew Biggio wrote a cover letter to Downey enclosing the policy, and indicated that he believed Downey would find everything in order with regard to the policy and extended an invitation for Downey to contact him if he had any questions. On or about October 24, 2007, therefore, Downey had the policy in his possession, custody and control and at that point had the capability of reading the policy to determine what it provided.

An insured is deemed to know the contents of his own insurance policies, and he may not avoid the consequences of any limitation or exclusion in a policy simply by showing or otherwise claiming that he did not read or understand the limitation or exclusion. *See Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 306-07 (1983) ("In the absence of proof of fraud, failure to read the contract is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof. . . . *Hionis* [*v. Northern Mutual Insurance Co.*, 230 Pa. Super. 511 (1974)] which would permit an insured to avoid the application of a clear and unambiguous limitation clause in an insurance

8

1018108v.1

contract, is not to be followed.") (internal citations and modifications omitted); *see also Kilmore v. Erie Insurance Co.*, 407 Pa. Super. 245, 254 (1991) ("Each insured has the right **and obligation** to question his insurer at the time the insurance contract is entered into as to the type of coverage desired and the ramifications arising therefrom.") (emphasis added).   Thus, regardless if Downey actually read the policy, he is deemed to be aware of any exclusions that the policy contained.  And the policy at issue here clearly, expressly and unambiguously stated in several places that it did not apply to wrongful acts that were committed prior to the retroactive date of October 1, 2007.  If Downey expected or desired alternative coverage, he was on notice in October 2007 that the policy did not conform.

The policy and associated documentation described the retroactive date and its consequences clearly, explicitly and unambiguously.  The first page of Policy SLA0006980 is the Declarations Page, CVX-LAW-DEC-114-PA (06/2005).  SOF 18.  In capital letters on the Declarations Page is the following Notice: "Except to such extent as may otherwise be provided herein, this policy is written on a claims made basis and covers only those claims first made against the insured during the policy period and reported in writing to the company **pursuant to the terms herein.  .  .  . Please read carefully**." (emphases added).  *Id.*  Item 6 of that Declarations Page states "Retroactive Date: See CVX-LAW-266 (04/05)." SOF 19.  Item 7 of the Declarations Page states "Endorsements: (SEE ATTACHED SCHEDULE OF FORMS AND ENDORSEMENTS)." SOF 20.  The next page of Policy SLA0006980 is CVX-LAW-SCH-100, entitled "Schedule of Policy Forms and Endorsements," which expressly identifies "Form(s) and Endorsement(s) made a part of this policy at the time of issue." SOF 21.  Among other forms, the forms CVX-LAW-101 (12/04), CVX-LAW-243 (12/04) CIRCUMSTANCE/INCIDENT REPORTING ENDT and CVX-LAW-266 (04/05) were expressly included as a part of Policy

9

SLA0006980.  SOF 22.

CVX-LAW-266 (04/2005), describing the retroactive date endorsement, provides: "In consideration of the premium paid, it is agreed that the policy is amended as follows: This policy does not apply to any CLAIMS or CLAIMS arising from, attributable, or based upon any WRONGFUL ACT(S) committed or alleged to have been committed by the following lawyers prior to the corresponding retroactive date. . . . Philip A. Downey, [retroactive date:] 10/01/2007." SOF 27.  The retroactive date exclusion is clearly noted multiple times in the body of the policy as well.  Page 1 of 12 of CVX-LAW-101 states in capital letters, "The coverage provided by this policy is limited to only those claims which arise from professional liability services rendered after the retroactive date stated in the declarations and which are first made against the insured and reported to us during the policy period or any applicable extended reporting period." SOF 23.

Page 1 of 12 of CVX-LAW-101 further states in capital letters, "Please review the policy carefully.  This policy contains important exclusions and conditions. . . . **Please discuss any questions concerning the coverage with your insurance agent or broker**." SOF 24 (emphasis added).  Section II of the policy, entitled CLAIMS TO WHICH THIS POLICY APPLIES, located on page 3 of 12 of CVX-LAW-101, was modified by the terms of CVX-LAW-243 (12/2004), which was included at the time the policy was initially issued.  SOF 26.  That modification provides, "Subject to the terms of this policy, this insurance applies to a claim **only if**: 1. The professional services giving rise to such claim or circumstance which could give rise to a claim are rendered . . . (d) **on or after the retroactive date specified** for the named insured and before the end of the policy period[.]" SOF 27 (emphases added).

Additionally, Section IX of the policy, entitled EXCLUSIONS, provides that "This

10

policy does not apply, and the Company shall not be obligated to defend, pay on behalf of or indemnify the insured, with respect to . . . any claim or damages . . . arising out of professional services rendered prior to the retroactive date specified for the named insured." SOF 28.  Section IX(14)(f), page 6 of 12.  Thus, the terms of the professional liability policy that Downey ultimately received on or about October 24, 2007 contained clear and unambiguous statements in multiple places that the policy did not cover any wrongful acts committed prior to October 1, 2007.  These indications were in plain sight, not obfuscated by misleading or indirect language, and were readily ascertainable by anyone reading the policy, including Downey.

If Downey was under the impression that he had an agreement with the First Indemnity and/or Biggio Defendants for them to procure for Downey a professional liability policy that covered wrongful acts prior to October 1, 2007—which the First Indemnity and Biggio Defendants deny—he received a policy that clearly differed from that impression on or about October 24, 2007.  Downey was invited to contact his broker with any questions about the policy by both his broker and written language in the policy, and under Pennsylvania law, he is charged with knowledge of the terms of the policy he received regardless if he had read them.  *See Standard Venetian Blind Co.*, 503 Pa. at 307.  Thus, Downey's claim accrued on or about October 24, 2007.

> *3.  Downey Renewed His Professional Malpractice Insurance in 2008 and Obtained the Same Coverage With the Same Terms, Including the Same Retroactive Date of October 1, 2007.*

Downey then renewed his professional liability insurance policy effective October 1, 2008, obtaining Policy No. SLA0010473.  SOF 31-35.  The terms of that policy are identical to the previous year's policy, SOF 32-33, and it is the policy under which Downey made his claim that gave rise to this litigation.  SOF 43.  On Policy No. SLA0010473, like the initial

11

professional malpractice insurance policy that Downey obtained, the declarations page indicated that "this policy is written on a claims made basis and covers only those claims first made against the insured during the policy period and reported in writing to the company **pursuant to the terms herein. . . . Please read carefully**." SOF 35 (emphasis added).

Also identical to the initial policy Downey obtained, the retroactive date on the declarations page was indicated on CVX-LAW-266 (04/05). SOF 36. On that page, the indication expressly states, "This policy does not apply to any CLAIMS or CLAIMS arising from, attributable to, or based upon any WRONGFUL ACT(S) committed or alleged to have been committed by the following lawyers prior to the corresponding retroactive date. . . . **Philip A. Downey, 10/01/2007**." SOF 36 (emphasis added). As in the initial policy, the retroactive date exclusion is clearly noted in the body of the policy as well. Page 1 of 12 of CVX-LAW-101 (12/2004) states in capital letters, "The coverage provided by this policy is limited to only those claims which arise from professional liability services rendered after the retroactive date stated in the declarations and which are first made against the insured and reported to us during the policy period or any applicable extended reporting period." SOF 37. Section II of the policy, entitled CLAIMS TO WHICH THIS POLICY APPLIES, located on page 3 of 12 of CVX-LAW-101, was modified by the terms of CVX-LAW-243 (12/2004). SOF 38. CVX-LAW-243 (12/2004) modified Section II of the policy to provide, "Subject to the terms of this policy, this insurance applies to a claim **only if**: 1. The professional services giving rise to such claim or circumstance which could give rise to a claim are rendered . . . (d) **on or after the retroactive date specified** for the named insured and before the end of the policy period[.]" SOF 39. (emphases added).

Section IX of the renewal policy, entitled EXCLUSIONS, provides that "This policy does not apply, and the Company shall not be obligated to defend, pay on behalf of or indemnify the

insured, with respect to . . . any claim or damages . . . arising out of professional services rendered prior to the retroactive date specified for the named insured." SOF 40.  Thus, the policy under which Downey made his claim clearly and repeatedly indicated that the retroactive date was 10/1/2007, and that the policy did not apply to any claims that arose prior to that retroactive date.

> 4. *Downey Failed to File Suit Within the Four-Year Statute of Limitations.*

Having allegedly received a policy with different terms than he expected, *i.e.*, an alleged breach of contract, Downey was required to file suit against the First Indemnity and/or Biggio Defendants within four years after the alleged breach.  42 Pa. Cons. Stat. § 5525(a)(3).  Thus, Downey was required by statute to file suit by approximately October 24, 2011, four years after receiving Policy No. SLA0006980.  Alternatively, if this Honorable Court finds that the breach of contract claim accrued upon receipt of Policy No. SLA0010473, approximately one year later, then Downey was required by statute to file suit by October 17, 2012.  In either event, Downey, in filing suit on August 7, 2013, failed to file suit within the governing four-year statute of limitations for contract actions.  His claim, therefore, is barred as a matter of law.

Downey may mistakenly rely on the so-called "discovery rule" and argue that his failure to read the clear and unambiguous terms of the professional liability policy should toll the statute of limitations on his claim against the First Indemnity or Biggio Defendants until his claim to First Mercury was denied.  Such an argument is not available to Downey here.  The "discovery rule" is "an exception to the requirement that a plaintiff bring suit within the applicable statute of limitations." *Cooper v. Sirota*, 37 Fed. Appx. 46, 49 (3d Cir. 2002) (applying Pennsylvania law), citing *Dalrymple v. Brown*, 549 Pa. 217, 223 (1997).  "The discovery rule provides that where the existence of the injury is *not known* to the complaining party and such knowledge *cannot*

13

*reasonably be ascertained* within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." *Dalrymple*, 549 Pa. at 223 (emphases added).  The party invoking the discovery rule has the burden of establishing that he or she is unable to learn of the injury despite exercising due diligence.  *Dalrymple*, 540 Pa. at 223.  "If a party has the means of discovery within his power but neglects to use them, his claim will still be barred." *Burnside v. Abbott Labs*, 351 Pa. Super. 264, 292 (1985*)*; *see also Speicher v. Dalkon Shield Claimants Trust*, 943 F. Supp. 554, 557 (E.D. Pa. 1996). "Where . . . reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law." *Brawner v. Education Management Corp.*, 513 Fed. Appx. 148, 150 (3d Cir. 2013), citing *Fine v. Checcio,* 582 Pa. 253, 268 (2005).  Specifically, "[t]he failure to make inquiry when information is available is a failure to exercise reasonable diligence *as a matter of law*." *Ingenito v. AC&S, Inc.*, 430 Pa. Super. 129, 135 (1993) (emphasis added). "Reasonable diligence" is an objective rather than a subjective standard. *Fine*, 582 Pa. at 267.

It is readily apparent here that Downey had "the means of discovery" of the alleged breach within his power, and that the alleged injury could be "reasonably ascertained."  *See Burnside*, 351 Pa. Super. at 292; *Dalrymple*, 549 Pa. at 223.  He simply could have read either the initial policy or the renewal policy, in which the terms of the retroactive date and its implications were repeatedly and expressly explained.  If Downey had read either policy, he could have notified the First Indemnity or Biggio Defendants if the professional liability policy did not meet his expectations, as he was repeatedly invited to do, or he could have initiated suit.  But Downey evidently made no inquiry into the retroactive date and did not seek clarification of the terms, despite its prevalence throughout the policy.  Because Downey did not "make inquiry

14

when the information [was] available," his failure to do so is a failure to "exercise reasonable diligence as a matter of law." *Ingenito*, 430 Pa. Super. at 135.   Thus, as a matter of law, the discovery rule does not relieve Downey of his burden of initiating suit within four years of the alleged breach. *Fine*, 582 Pa. at 268.   Consequently, the First Indemnity and Biggio Defendants are entitled to judgment as a matter of law as to Downey's claims against them.

An unpublished Third Circuit opinion is directly on point.  In *Cooper v. Sirota*, 37 Fed. Appx. 46 (3d Cir. 2002), the court confronted a similar case in which the terms of a contract were readily apparent – *i.e.* discoverable – to the plaintiff, had the plaintiff simply read the policy or made inquiry regarding its terms.  In November 1994, the plaintiff in *Cooper* purchased disability insurance with Paul Revere Life Insurance Policy with the assistance of a broker.  37 Fed. Appx. at 47.  In November 1995, the plaintiff applied for two replacement policies with Berkshire Life Insurance Company, which provided the same benefits as her Paul Revere policy. *Id.* Six years later, in April 2000, the plaintiff sued the insurance broker for breach of contract, asserting that the broker misrepresented to her the amount of her insurance coverage.  *Id.*

In examining whether to apply the discovery rule, the *Cooper* Court stated, "we must inquire whether Cooper 'exhibited those qualities of attention, knowledge, intelligence and judgment which society requires of its members for protection of their own interests.'"  *Id.* at 49, citing *Burnside*, 351 Pa. Super. at 292.  The Court held that the "discovery rule" did not apply, and the statute of limitations had run by the time the plaintiff brought her suit.  *Id.* at 47, 49.  The *Cooper* Court agreed with the lower court insofar as the plaintiff "could have brought all of her complaints on the day she allegedly received a substantially different policy or policies than that which she had requested."  *Cooper*, 37 Fed. Appx. at 48.  "Cooper's failure to read the policies was a failure to use reasonable diligence and the District Court did not err in holding that her

lawsuits were untimely." *Cooper*, 37 Fed. Appx. at 49. Downey, too, could have brought all of his complaints the day he received a policy with different terms than he allegedly requested.

Downey clearly had sufficient information available to him, as he has had the complete text of the policy since approximately October 24, 2007. If he read the policies, Downey, a lawyer, surely would have seen and understood the import of the retroactive date that was clearly and unambiguously explained several times, and he could have addressed any perceived problems with his coverage. If Downey did not read the policies, he failed to exercise reasonable diligence, and Pennsylvania law does not toll the running of statutes of limitations under those circumstances. Either way, Downey's claims are barred because he did not institute them within the prescribed statutory period. The First Indemnity and Biggio Defendants thus submit that they are entitled to judgment as a matter of law as to all claims against them.

> **B.**      **Downey Requested a Policy Wherein Wrongful Acts Prior to October 1, 2007 Were Not Covered, and Repeatedly Signed Applications for Renewal Policies Acknowledging that He Was Not Covered for Wrongful Acts Prior to October 1, 2007.**

Separate and apart from the fact that Downey is barred by the statute of limitations from asserting his claim against the First Indemnity and Biggio Defendants, Downey requested that the professional liability policy the First Indemnity and Biggio Defendants procured for him did not cover wrongful acts prior to October 1, 2007. *See SOF* 10; *see also SOF* 7-9, 11-13. Additionally, Downey repeatedly signed applications for renewal policies acknowledging that he was not covered for "prior acts" or wrongful acts prior to the October 1, 2007 retroactive date. SOF 45-48. Thus, by his own conduct, Downey has repeatedly requested, accepted and acknowledged the October 1, 2007 retroactive date. He may not now recover from the First Indemnity or Biggio Defendants by alleging that he did not know that his professional liability policy did not cover acts prior to October 1, 2007.

16

In the Quick-Renewal Form that Downey submitted on September 24, 2008, there is a clear indication that "Your policy form will be the same as expiring." SOF 32. The Quick-Renewal Form further provides that "retro-active date will be the same as expiring policy." SOF 33. Downey affixed his signature above the line stating "I Accept." SOF 34. The Certificate of Liability Insurance for Policy No. SLA0010473 also clearly defines the retroactive date of October 1, 2007. SOF 35.

Additionally, Downey prepared and signed another application for professional liability insurance to be obtained through State National Insurance Company on August 2, 2010. SOF 45. In that application, Downey **expressly acknowledged** that he had a prior acts exclusion date of October 1, 2007. SOF 46. Again in 2011, Downey signed a renewal application for his professional liability insurance through State National Insurance Company. SOF 47. In this application, signed and dated on September 1, 2011, Downey again acknowledged that his policy did not cover "prior acts" before October 1, 2007. SOF 48.

Thus, there is clear evidence that Downey requested the retroactive date to be October 1, 2007, and Downey repeatedly signed statements, both before and after Knopick filed suit against him, affirming his belief that he was not covered for wrongful acts prior to October 1, 2007 and/or that his professional liability policy's retroactive date was October 1, 2007. Thus, Downey, by his own acts, has affirmed that he knew of the extent of his policy's coverage. For this reason as well, the First Indemnity and Biggio Defendants are entitled to judgment as a matter of law.

17

IV.   **CONCLUSION**

On or about October 24, 2007, Downey received a professional liability policy procured by the First Indemnity and/or Biggio Defendants that did not cover wrongful acts prior to October 1, 2007—which he alleges constitutes a breach of contract.   Thus, Downey had four years following receipt of that policy to institute suit.   Downey did not file his claim against the First Indemnity or Biggio Defendants until August 7, 2013, almost six years later.   Thus, his claims are barred as a matter of law because they were not instituted within the four-year statute of limitations that governs contract suits.   Additionally, Downey repeatedly acknowledged in writing that he was aware that the professional liability insurance procured by the First Indemnity and/or Biggio Defendants did not cover wrongful acts prior to October 1, 2007 and/or the policy's retroactive date of October 1, 2007.   Therefore, the First Indemnity and Biggio Defendants are entitled to judgment in their favor as a matter of law as to all claims Downey filed or may have filed against them.

WHEREFORE, the First Indemnity and Biggio Defendants pray this Honorable Court to enter judgment in their favor as a matter of law, as well as any other relief that is just, proper and appropriate.

1018108v.1

Respectfully submitted,

Defendants,

FIRST INDEMNITY INSURANCE, FIRST
INDEMNITY INSURANCE AGENCY, INC., FIRST
INDEMNITY INSURANCE SERVICES, INC., FIRST
INDEMNITY INSURANCE GROUP, ANDREW
BIGGIO, AND JOHN M. BIGGIO,

/s/ *Clinton J. Wolbert*

George C. Rockas (*pro hac vice*)
Clinton J. Wolbert (*pro hac vice*)
Wilson, Elser, Moskowitz,
Edelman & Dicker LLP
260 Franklin Street, 14th Floor
Boston, MA 02110
(617) 422-5300

Dated: March 12, 2014

19

## CERTIFICATE OF SERVICE

I, Clinton J. Wolbert, hereby certify that, on this 12 day of March, 2014, the foregoing document was filed through the ECF system, the document will be sent electronically to the registered participants, and paper copies will be served via first class mail on those indicated as non-registered participants.

/s/ Clinton J. Wolbert

_____

Clinton J. Wolbert

1018108v.1