IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILIP A. DOWNEY, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FIRST INDEMNITY INSURANCE, et al., | : | No. 13-4545 |
| | : | |
| Defendants. | : | |

Goldberg, J.                                                October 14, 2016

<u>MEMORANDUM OPINION</u>

The issue presented in this breach of contract action[1] is whether Defendants are obligated to provide legal malpractice coverage to Plaintiff, Philip A. Downey, Esq. Plaintiff alleges that Defendants, First Indemnity Insurance,[2] Andrew Biggio (collectively "First Indemnity Defendants"), First Mercury Insurance Company ("First Mercury"), and State National Insurance Company ("State National"), collectively failed to provide him with the professional malpractice insurance policy that he requested—one that would leave him with "no gaps in coverage" from his previous policy with a separate carrier. As a result of Defendants' alleged failure to furnish the requested policy, Plaintiff faced uninsured exposure for a legal malpractice claim filed against him by a former client.

Before me are the First Indemnity Defendants' motion for summary judgment, and First Mercury and State National's motion for summary judgment. Both sets of Defendants argue that

---

[1] While Plaintiff only included one count in his Amended Complaint, he advances multiple theories of liability: "Breach of Contract (Simple and Professional) / Unjust Enrichment / Quasi-Contract / Promissory Estoppel." (Am. Compl. ¶¶ 47–49.)

[2] Reference to "First Indemnity Insurance" also includes First Indemnity Insurance Agency, Inc. Additionally, Plaintiff named as Defendants John M. Biggio, First Indemnity Insurance Services, Inc., and First Indemnity Insurance Group. However, in his response in opposition to the First Indemnity Defendants' motion for summary judgment, Plaintiff requested "withdrawal of his claims" against these three Defendants. (Pl.'s Resp. in Opp. to First. Indem. Mot. Summ. J. 12.) Therefore, they will be dismissed in my accompanying Order.

the plain and unambiguous language of the policy excludes the claim for which Plaintiff seeks coverage. Defendants further assert that the "reasonable expectations" doctrine relied upon by Plaintiff is inapplicable.

For the reasons set forth below, I conclude that the unambiguous language of the policy excludes Plaintiff's claim for coverage. I further conclude that the "reasonable expectations" doctrine is inapplicable to this case. Consequently, I will grant both motions.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed, unless otherwise noted:

During the pertinent time period, Plaintiff was an attorney, licensed to practice law in Pennsylvania. In July 2007, responding to a solicitation he had received from insurance brokers, First Indemnity Defendants, Plaintiff sought to purchase a new Lawyers Professional Liability ("LPL") insurance policy. On July 27, 2007, Plaintiff submitted an initial insurance application to First Indemnity, but did not receive a response. (Pl.'s Statement of Facts "SOF" ¶¶ 1, 12.)

On August 18, 2007, Plaintiff's malpractice insurance policy with his prior carrier, Philadelphia Insurance Companies, ended. (First Merc. & State Nat'l Mot. Summ. J., Ex. H, p. 13; First Indem. Mot. Summ. J., Ex. E.) At that point in time, Plaintiff maintained his own independent practice, but was also "Of Counsel" with the law firm of Kenney, Egan, McCafferty & Young. (Pl.'s Resp., Ex. D; Pl.'s Dep. 18:6–10; 19:17–20.)

In September 2007, as Plaintiff was preparing to leave the Kenney firm to focus exclusively on his own practice, the Downey Law Firm, LLC, he claims to have spoken on the telephone with First Indemnity Insurance agent, Defendant Andrew Biggio, about acquiring a new LPL policy. Plaintiff claims that he made it clear to Biggio that he wanted malpractice coverage that did not leave any "gaps" between his prior policy with Philadelphia Insurance

2

Companies and the start date of his new policy through First Indemnity Insurance. (Pl.'s SOF ¶¶ 13-14.) Plaintiff testified that Biggio assured him there would not be any gaps in coverage between his old and new policies. (Pl.'s Dep. 52:3–7.) Biggio denies that he ever made such a statement, nor did he recall actually speaking with Plaintiff. (Biggio Dep. 9:12–17; 20:19–24; 21:1–18.) These facts are thus disputed.

It is undisputed, however, that Plaintiff faxed a second insurance application to Biggio on September 22, 2007. (Pl.'s Resp., Ex. C; First Merc. & State Nat'l Mot. Summ. J., Ex. H.) On page ten (10) of his completed application, in response to the question, "Coverage requested to be effective on ____ / ____ / ____ (month/day/year)", Plaintiff filled in the corresponding blank spaces with "10/1/2007" [October 1, 2007]. (First Merc. & State Nat'l Mot. Summ. J., Ex. H, p. 10.)  On page two (2) of his completed application, Plaintiff indicated that the establishment date of his new firm, of which he was the sole proprietor, was going to be "10/1/2007." (Id. at p. 2 ¶¶ 5, 7.) On page thirteen (13) of his completed application, Plaintiff indicated that his firm was not currently insured against malpractice claims. (Id. at p. 13.)

On October 6, 2007, Plaintiff received a quote from First Indemnity Insurance, which had been signed by both Defendant Andrew Biggio and another First Indemnity officer, John Biggio. (First Merc. & State Nat'l Mot. Summ. J., Ex. J.) At the top of the page, in capital letters, the quote states that the "Proposed Effective Date" will be "10/1/2007." (Id.) Toward the bottom of the same page, in capital letters, the quote lists "Conditions: 'Claims Made Policy Covering 1 Attorney, Retro-Active Date 10/1/2007.'" Also attached to the quote was the following disclosure:

> PRIOR ACTS COVERAGE INFORMATION
>
> The claims-made lawyers professional liability insurance policy only covers claims resulting from acts, errors or omissions by an insured in the performance of professional services as a lawyer,

> provided that the claim is first made against you and reported during the policy term.  The act, error or omission alleged in the claim must have taken place during the policy period or subsequent to the "Prior Acts Date" stated as an endorsement to the policy. This means that claims from acts, errors or omissions committed before the "Prior Acts Date" are not covered by this policy. If no prior acts exclusion is attached to the policy, "Full Prior Acts" coverage not limited by a date, is provided for acts, errors or omissions committed by the insured before the policy period. (Id.)

Once Plaintiff submitted his premium, Andrew Biggio sent the policy to Plaintiff on October 24, 2007. (First Merc. & State Nat'l Mot. Summ. J., Ex. J.)  The "Declarations" page of the policy lists the "policy period" as "10/01/2007 [to] 10/01/2008." Toward the top of the "Declarations" page, in capital letters, the policy states that it is a claims made policy, and "covers only those claims first made against the insured during the policy period and reported in writing to [Defendants] pursuant to the terms herein." (Id.) A schedule of endorsements appeared on the second page of the policy. A "Retroactive Date Endorsement" was listed within that schedule. The Retroactive Date Endorsement itself reads:

> This policy does not apply to any CLAIMS or CLAIMS arising from, attributable to, or based upon any WRONGFUL ACT(S) committed or alleged to have been committed by [Plaintiff] prior to the corresponding retroactive date.

 "NAME OF ATTORNEY AND RETROACTIVE DATE" appeared immediately below the above-quoted language. "Philip A. Downey, 10/01/2007" appears directly thereafter. (Id.)

Plaintiff renewed the policy for another year on September 24, 2008, which meant that his coverage extended through October 1, 2009.[3] (First Merc. & State Nat'l Mot. Summ. J., Ex. B.) On July 6, 2009, one of Plaintiff's former clients filed a complaint against him, alleging that he committed legal malpractice on July 5, 2007 by failing to file a claim within the applicable

---

[3] Although the claim made against Plaintiff was made under the 2008-2009 policy, Plaintiff renewed the policy at least three more times, which meant he continued his insurance with Defendants up through October 1, 2012. (First Merc. & State Nat'l Mot. Summ. J., Ex. G.)

statute of limitations.  Plaintiff contacted the First Indemnity Defendants to notify them that he

had been sued. At this point in time, the First Indemnity Defendants acted as the "underwriting

manager[s] for First Mercury/State National, meaning [they] wrote, quoted, [and] issued …

policies on behalf of First Mercury and State National … in [all] 50 states." (Biggio Dep. 13:6–

18.)[4] Thus, First Indemnity advised Plaintiff to contact First Mercury regarding his claim, which

he did on August 3, 2009.

On August 7, 2009, First Mercury sent a letter to Plaintiff denying coverage. The letter

explained that "[t]he wrongful acts/errors which give rise to this claim ... are before your

retroactive date of 10/1/07. As the provisions [of the policy] make clear, claims are not covered

which arise from errors/wrongful acts occurring before the applicable retroactive date[.]" (First

Indem. Mot. Summ. J., Ex. D at p. 3.)

On September 25, 2009, Plaintiff contacted his former malpractice insurance carrier,

Philadelphia Insurance Companies, which also denied coverage in a letter dated December 31,

2009. (First Indem. Mot. Summ. J., Ex. F.)[5]

---

[4] The parties did not brief the issue of whether Biggio was an insurance "agent" of First Mercury and State National, or whether he was an independent "broker." This distinction could be important when determining whether Biggio's alleged representations to Plaintiff may be imputed to First Mercury and State National. See Joyner v. Harleysville Ins. Co., 574 A.2d 664, 668 (Pa. Super. 1990); Benevento v. Life USA Holding, Inc., 61 F. Supp. 2d 407, 416 (E.D. Pa. 1999). I note, however, that First Mercury and State National have not expressly disputed that Biggio was not their "authorized representative" when issuing the policy to Plaintiff. Additionally, First Mercury and State National repeatedly cite to the insurance application and quote in support of their motion for summary judgment, and these documents were at the heart of the interactions between Plaintiff and Biggio. Finally, Plaintiff alleges in his Amended Complaint that the First Indemnity Defendants (i.e., the company where Biggio worked) "were not independent," but rather had "an arrangement" with First Mercury and State National to channel business to them. (Am. Compl. ¶ 26.) Thus, for purposes of this Opinion, viewed in the light most favorable to Plaintiff, I will assume that Biggio's representation may be imputed to First Mercury and State National through agency principles under Pennsylvania law. See Joyner, 574 A.2d at 668. Additionally, no party has specifically addressed the issue of whether or not Biggio and First Indemnity were actually parties to the insurance policy. Again, viewed in the light most favorable to Plaintiff, I will assume for purposes of this Opinion that all of the Defendants were parties to the insurance policy such that Plaintiff may maintain his breach of contract claim against all of them.

[5] Plaintiff testified that Philadelphia Insurance Companies denied coverage because he did not file his claim during the policy period with Philadelphia Insurance Companies. (Pl.'s Dep. 22:1–9.)

On August 7, 2013, exactly four years after First Mercury denied coverage, Plaintiff filed his initial complaint in this Court. He filed a one-count amended complaint on February 7, 2014, asserting "breach of contract (simple and professional) / unjust enrichment / quasi-contract / promissory estoppel" against all Defendants. Plaintiff generally avers that as a result of Defendants' collective failure to furnish the policy that he requested, and that which Andrew Biggio represented would be provided, he was left with a gap in coverage. As a result, Plaintiff claims to have incurred over $250,000 in attorneys' fees and costs, and potentially faces exposure for substantial uninsured damages. (Am. Compl. ¶ 46.)

On March 12, 2014, shortly after filing their answer, and before the discovery process started, the First Indemnity Defendants filed a motion for summary judgment arguing that Plaintiff's claims were barred by the four-year statute of limitations for breach of contract claims in Pennsylvania. First Mercury and State National joined that motion on March 18, 2014. Plaintiff responded by arguing that the "reasonable expectations" doctrine applied, and thus the alleged breach (i.e., the date on which coverage was denied, August 7, 2009) occurred within the applicable four-year statute of limitations. Based on the limited record before me at the time, I concluded that a reasonable fact finder could conclude that the "reasonable expectations" doctrine applied, and thus the alleged breach would have occurred within the applicable statute of limitations (i.e., the date First Mercury denied coverage). Therefore, summary judgment was denied at that time. (Doc. No. 64, pp. 8–9.)

On July 31, 2015, after the parties completed discovery, First Mercury and State National filed a motion for summary judgment, which is presently before me. With the record now developed, these Defendants address the merits of the "reasonable expectations" doctrine as applied to the facts of this case, and argue that no reasonable fact finder could conclude that

Plaintiff reasonably expected that his malpractice insurance policy with Defendants provided coverage for acts occurring on July 5, 2007, roughly three months prior to his effective coverage date of October 1, 2007.

On October 15, 2015, the First Indemnity Defendants also filed another motion for summary judgment, which is currently before me. In addition to joining First Mercury and State National's argument regarding the inapplicability of the "reasonable expectations" doctrine, First Indemnity Defendants, in construing one of Plaintiff's claims as a professional malpractice allegation, argue that Plaintiff has failed to submit any expert evidence, as required by Pennsylvania law, to suggest that Defendant Andrew Biggio's conduct fell below an objectively reasonable standard of care for insurance professionals.

## II.    LEGAL STANDARD

A party moving for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact in dispute, and that judgment is appropriate as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment has been made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  An issue is "genuine" if a reasonable jury could rule in favor of the non-moving party based on the evidence presented. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  A factual dispute is "material" if it might affect the outcome of the suit under the appropriate governing law. Id. at 423. The non-moving party cannot avert summary judgment with speculation or conclusory allegations, but rather must cite to the record.  Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d

Cir. 1999); Fed. R. Civ. P. 56(c). On a motion for summary judgment, the court considers the

evidence in the light most favorable to the non-moving party. Anderson, 477 U.S. at 256.

### III.   ANALYSIS[6]

First Mercury denied coverage because the alleged wrongful act raised in the legal

malpractice suit occurred prior to the effective coverage date of October 1, 2007. Plaintiff asserts

that the malpractice claim against him should be covered because "Defendants misrepresented to

Plaintiff that there would be 'no gaps' in coverage," and that he "relied on [Andrew] Biggio's

expert guidance" when he was assured that his transition to the new policy would not leave him

with any gaps. (Pl.'s Resp. 7.) Plaintiff emphasizes that according to First Mercury's

"guidelines," he should have received coverage for acts occurring prior to the "start date" of his

policy because his lapse in coverage was a "major exposure" which Biggio never mentioned.

(Id.) Plaintiff maintains that it was "certainly reasonable for Plaintiff to assume he had coverage

based on Defendants' … assurances combined with Defendants' continuing failure to advise

Plaintiff of [this] major exposure." (Id.)

#### A.   *The LPL Insurance Policy*

The interpretation of an insurance contract is a question of law to be decided by the court.

Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997); Betz v. Erie Ins. Exch., 957

A.2d 1244, 1252-53 (Pa. Super. 2008). Generally, where the terms of a policy are "clear and

unambiguous, a court is required to give effect to that language." Standard Venetian Blind Co. v.

American Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983). "Contractual language is ambiguous if

it is reasonably susceptible to different constructions and capable of being understood in more

---

[6] I will apply Pennsylvania law to this case. See Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F. Supp. 2d 513, 525 (E.D. Pa. 2012) ("In federal diversity actions, district courts generally must apply the choice-of-law rules of the forum state."). Defendants First Mercury and State National further acknowledge that "[t]he policy was issued in Pennsylvania to a Pennsylvania insured. [Therefore], Pennsylvania law should apply." (First Merc. & State Nat'l Mot. Summ. J. at 9.)

than one sense.... In determining whether a contract term is ambiguous, a court must consider the actual words of the agreements themselves, as well as any alternative meanings offered by counsel." Alleman v. State Farm Life Ins. Co., 334 F. App'x 470, 472 (3d Cir. 2009). "Under Pennsylvania law, the entire insurance contract consists of the policy along with the application, riders, and endorsements." Id. at 473.

The disclosure attached to the quote that Plaintiff received on October 6, 2007 clearly states that the "act, error or omission alleged in [a] claim must have taken place during the policy period or subsequent to the 'Prior Acts Date' stated as an endorsement to the policy. This means that claims from acts, errors or omissions committed before the 'Prior Acts Date' are not covered by this policy." Additionally, the Retroactive Date Endorsement attached to the policy that Plaintiff received on October 24, 2007 clearly states that coverage "does not apply to any CLAIMS or CLAIMS arising from, attributable to, or based upon any WRONGFUL ACT(S) committed or alleged to have been committed by [Philip A. Downey] prior to the corresponding retroactive date" of October 1, 2007. Thus, the Retroactive Date Endorsement attached to the policy set forth Plaintiff's "Prior Acts Date"—October 1, 2007.

In my December 30, 2014 Order denying the Defendants' previous motions for summary judgment, I observed that "the plain language of the insurance policy provides an exclusion for [any] wrongful acts occurring prior to October 1, 2007." (Doc. No. 64, p. 5 ¶ 11.) I stand by that conclusion and reiterate here that the plain language of the policy at issue is clear and unambiguous. Plaintiff has not argued otherwise.[7]

---

[7] Indeed, Plaintiff's response in opposition to First Mercury and State National's motion for summary judgment states that Plaintiff "should have been given retroactive coverage"—not that he actually received retroactive coverage. (Pl.'s Resp. in Opp. to First Merc. & State Nat'l Mot. Summ. J. at 9.)

**B.  *The "Reasonable Expectations" Doctrine***

In an effort to avoid the plain language of the policy, Plaintiff relies upon his alleged conversation with Biggio and the "reasonable expectations" doctrine. Under this doctrine, Pennsylvania courts have acknowledged the inherent disparity of bargaining power that exists between an insurer and insured, as well as the complexity of policy terms and conditions in insurance contracts. This dynamic sometimes "forces the insurance consumer to rely upon the oral representations of the insurance agent[,]" . . . [which] may or may not accurately reflect the contents of the written document." Collister v. Nationwide Life Ins. Co., 388 A.2d 1346, 1353 (Pa. 1978). Appreciation of these issues has prompted judicial formulation of the "reasonable expectations" doctrine, which the United States Court of Appeals for the Third Circuit has summarized as follows:

> Pennsylvania case law . . . dictates that the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured. In most cases, the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations. Courts, however, must examine the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured. As a result, even the most clearly written exclusion will not bind the insured where the insurer or its agent has created in the insured a reasonable expectation of coverage. However, this aspect of the doctrine is only applied "in very limited circumstances" to protect non-commercial insureds from policy terms not readily apparent and from insurer deception. Absent sufficient justification, . . . an insured may not complain that his or her reasonable expectations were frustrated by policy limitations that are clear and unambiguous.

Liberty Mut. Ins. Co. v. Treesdale, Inc., 418 F.3d 330, 344 (3d Cir. 2005).[8]

---

[8] The parties have not specifically addressed whether Plaintiff is a "non-commercial insured."  I note that precedent regarding the availability of this doctrine to commercial insureds is somewhat mixed.  See e.g., Reliance Ins. Co. v. Moessner, 121 F.3d 895, 904–05 (3d Cir. 1997) ("[W]e predict that Pennsylvania, which has not expressly opined on the point, will apply the doctrine to cases … regardless of the insured's commercial status."); but see Liberty Mut. Ins. Co. v. Treesdale, Inc., 418 F.3d 330, 345 (3d Cir. 2005) ("For purposes of our discussion, we ignore the fact that [Defendant] is hardly a 'non-commercial' insured and that the doctrine of reasonable expectations has extremely limited relevance to our discussion if it applies at all."); see also Millers Capital Ins. Co. v. Gambone Bros. Dev. Co., 941 A.2d 706, 717 (Pa. Super. 2007) ("The parties disagree as to whether the 'reasonable expectations' doctrine

Thus, where an insurer or its agent creates a reasonable expectation of coverage in the insured, but subsequently makes a unilateral change to the terms of the policy applied for and paid for, the insured's reasonable expectations of coverage may prevail over the unambiguous language of the policy. UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 502-03 (3d Cir. 2004); Millers Capital Ins. Co. v. Gambone Bros. Dev. Co., 941 A.2d 706, 717 (Pa. Super. 2007). The Pennsylvania Superior Court has emphasized, however, that the doctrine must be applied in limited circumstances:

> If we were to allow an insured to override the plain language of a policy limitation anytime he or she was dissatisfied with the limitation by simply invoking the reasonable expectations doctrine, the language of insurance policies would cease to have meaning and, as a consequence, insurers would be unable to project risk. The inability to project risk would dissuade insurers from doing business in the Commonwealth and the net result would be an increase in premiums for consumers. We refuse to set such a deleterious sequence of events into motion.

Millers Capital Ins. Co., 941 A.2d at 717-18.

Therefore, courts must examine "the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured … with an emphasis on the express terms of the written insurance policy." Regis Ins. Co. v. All Am. Rathskeller, Inc., 976 A.2d 1157, 1166 (Pa. Super. 2009). And "[w]here an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, such reliance is an affirmative defense upon which the insurer

---

can be invoked by a 'sophisticated' commercial enterprise…. The parties further disagree as to how to define what constitutes a "sophisticated" commercial enterprise…. [W]e leave these questions for another day.") (citations omitted.) Given the conflicting precedent on this issue, and viewing the pertinent facts in the light most favorable to Plaintiff, I conclude that summary judgment is not appropriate strictly on the basis that Plaintiff purchased the LPL policy at issue in his professional capacity.

bears the burden of proof." <u>Century Sur. Co. v. QSC Painting, Inc.</u>, 2010 WL 891245, at *4 (W.D. Pa. Mar. 8, 2010); <u>W. v. Lincoln Ben. Life Co.</u>, 509 F.3d 160, 171 (3d Cir. 2007).[9]

The Third Circuit has also observed that status as a "sophisticated purchaser" of insurance is a "factor to be considered when resolving whether the insured acted reasonably in expecting a given claim to be covered," but such a status does not automatically foreclose reliance on the doctrine. <u>UPMC Health Sys.</u>, 391 F.3d at 503-04. "A 'sophisticated' insured is typically characterized as a large commercial enterprise that has substantial economic strength, desirability as a customer, and an understanding of insurance matters, or readily available assistance in understanding and procuring insurance." <u>Reliance Ins. Co. v. Moessner</u>, 121 F.3d 895, 905 n.8 (3d Cir. 1997). "As such, courts should carefully consider whether an insured of the specified level of sophistication had reason to know of the existence of the exclusion prior to purchasing or renewing the policy, and hence had effective control over the insurance transaction." <u>Id.</u> at 905–06.

## C. *Application of the "Reasonable Expectations" Doctrine to Plaintiff's Claim*

In urging that the "reasonable expectations" doctrine should not defeat summary judgment, defendants rely heavily on <u>A.P. Pino & Associates, Inc. v. Utica Mut. Ins. Co.</u>, 2012 WL 2567093 (E.D. Pa. July 3, 2012). In <u>A.P. Pino</u>, co-plaintiff A.P. Pino & Associates ("APA") was the named insured on two insurance policies issued by Defendant, Utica Mutual Insurance Co. ("Utica"). Co-plaintiff Gerald A. Pino ("Pino"), a partial owner of APA, had overseen the purchase of these policies. When filling out the "desired effective date" for the policies, Pino selected October 15, 2009. Because this was the first policy that APA had purchased through

---

[9] This burden is measured by a preponderance of the evidence. <u>See</u> <u>Bensalem Twp. v. Int'l Surplus Lines Ins. Co.</u>, 38 F.3d 1303, 1311 (3d Cir. 1994) ("[T]here is a burden upon the insurance company … to prove … by a preponderance of the evidence, that [the insured] was aware and understood the exclusion that existed here.") (quoting <u>Tonkovic v. State Farm Mut. Auto. Ins. Co.</u>, 521 A.2d 920, 922 (1987)).

Utica, Utica's underwriter inserted a retroactive date of October 15, 2009 for both policies, and both policies stated that they did not provide coverage for acts occurring prior to this retroactive date. The coverage proposal/quote also included a retroactive date of October 15, 2009. In November 2010, APA and Pino were sued for, *inter alia*, breach of contract, negligence, and professional negligence. The alleged wrongful conduct at issue occurred in May 2009, roughly five (5) months prior to the retroactive date specified in the Utica policies. Therefore, Utica denied coverage. Pino admitted that he did not thoroughly read through the policies. Id. at *1–3.

In granting Utica's motion for summary judgment, the district court first concluded that the "policy language setting out the retroactive date [was] clear and unambiguous." Id. at *4. The court then analyzed the plaintiffs' claims under the "reasonable expectations" doctrine, and concluded that "any expectation that APA would be provided with prior acts coverage" would be "patently unreasonable." Id. at *5. Importantly, it had been "disputed whether [Utica's underwriter] explained the import of the retroactive date to Pino[.]" Id. at *2. Nevertheless, the court recognized that "the two insurance policies, the two coverage proposals, and the two sets of terms and conditions, all of which Pino signed, clearly and repeatedly state the retroactive date and its effect." Id.  The court concluded by observing that the plaintiffs, one of whom was an insurance agent, were not the type of "unsophisticated non-commercial insureds" typically protected by the reasonable expectations doctrine. Id. at *6.

A.P. Pino is factually similar to the case before me. Like A.P. Pino, the policy language excluding retroactive coverage is clear and unambiguous. And as Defendants emphasize, Plaintiff is not the type of "unsophisticated" consumer that the reasonable expectations doctrine is primarily meant to protect. The undisputed record reflects that Plaintiff was the sole proprietor of the Downey Law Firm at the time he purchased the LPL policy at issue. According to the

firm's website, Plaintiff held himself out as knowledgeable in the practice area of "Insurance Law." (First Merc. & State Nat'l Mot. Summ. J., Ex. K.) The website states within the "Insurance Law" subsection that the firm has "successfully represented individuals for years in obtaining monies from rogue insurance companies[.] More often than not, Insurance Companies fail to pay out all monies owed on a claim[.]" (Id.)

Plaintiff contests Defendants' characterization of him as "sophisticated" in insurance law. (Pl.'s Resp. at 9.) He maintains that he is "not an insurance expert," but merely has "experience in insurance law … as a defense attorney representing insureds." (Id.) Plaintiff testified that he has some "limited experience in bad faith" insurance law, but would partner with another attorney to handle it. (Pl.'s Dep. 68:3–19.) According to Plaintiff, his experience "varies greatly from the facts" of this case. (Pl.'s Resp. 9.)

While Plaintiff's characterization of his level of sophistication may be true, it is undisputed that Plaintiff was an attorney when he purchased the policy. And as noted above, he advertised to the public that he was experienced in insurance law, and this is certainly a factor to be considered in evaluating the totality of the insurance transaction at issue, and his expectation of coverage for acts occurring before October 1, 2007. Even when viewed in the light most favorable to Plaintiff, the undisputed evidence of record reflects that, while Plaintiff is not a "large commercial enterprise," he certainly had an understanding of insurance matters, and thus he was not an "unsophisticated" purchaser of insurance at the time he obtained the policy.

In an effort to avoid summary judgment, Plaintiff also highlights his deposition testimony where he recounts the alleged oral representation by Biggio regarding "no gaps in coverage." Plaintiff argues that this representation creates a genuine dispute as to whether Plaintiff justifiably relied on that conversation, regardless of what language was actually contained within

the policy. (Pl.'s Resp. 10.) Plaintiff urges that this is simply a "he said-she said" case, and "Biggio's motivation and credibility require [a] jury determination." (Id.) I conclude that while Andrew Biggio's alleged representation regarding "no gaps in coverage" may be a disputed fact, it is not a material disputed fact.

The law within Pennsylvania and this circuit reflects that the "reasonable expectations" doctrine is typically invoked where an insurer unilaterally alters the terms of the policy such that it runs contrary to the policy applied for and paid for.  As the Third Circuit has emphasized:

> There is "a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested," as the facts of Tonkovic demonstrated, and "cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for," as occurred in Standard Venetian Blind.

Lincoln Ben. Life Co., 509 F.3d at 168 (quoting Standard Venetian Blind Co., 469 A.2d at 567 and Tonkovic v. State Farm Mut. Auto. Ins. Co., 521 A.2d 920, 925 (Pa. 1987)); see also Regis Ins. Co., 976 A.2d at 1167.

For several reasons, I conclude that Plaintiff received "precisely the coverage that he requested," and therefore, as a matter of law, the totality of the insurance transaction reflects that no reasonable fact finder could conclude that Plaintiff possessed a reasonable expectation of coverage for acts occurring prior to October 1, 2007. Lincoln Ben. Life Co., 509 F.3d at 168.

First, Plaintiff specifically requested the effective coverage date of October 1, 2007 in his application. Thus, there is an absence of any record evidence from which a fact finder could reasonably infer that Defendants "unilaterally limited" the scope of Plaintiff's coverage from the time that he submitted his application until the time that they issued the policy. Importantly, Plaintiff submitted his insurance application after his alleged telephone conversation with

Andrew Biggio, and Plaintiff has not cited to any portion of his insurance application, or other evidence of record, to suggest that he applied for "gap" and/or prior acts coverage. In other words, Plaintiff offers no explanation as to why he requested coverage in his application that differed from what he claims to have discussed with Biggio.

Second, on October 6, 2007, Plaintiff received a quote from First Indemnity, which again indicated—in capital letters—that the proposed effective date for the policy would be October 1, 2007. This quote said nothing about "gap" coverage, and clearly displayed Plaintiff's retroactive date as "10/1/2007." (First Merc. & State Nat'l Mot. Summ. J., Ex. J.) Plaintiff submitted his first premium without objection to any of the proposed policy conditions or coverage dates.

Third, once Plaintiff submitted his premium, the policy in question was issued and sent to him setting forth the effective date of coverage as October 1, 2007. An endorsement to the policy reiterated that coverage did not include "claims committed by [Plaintiff] prior to the corresponding retroactive date," which again, was October 1, 2007. See Regis Ins. Co., 976 A.2d at 1167 ("[T]here was no unilateral change in the scope of coverage from the time of application to the time of policy delivery[,]" and thus the "reasonable expectations" doctrine does not apply); see also Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 440 (3d Cir. 2006) ("Absent sufficient justification, … an insured may not complain that his … reasonable expectations were frustrated by policy limitations that are clear and unambiguous.") (citing Liberty Mut. Ins. Co. v. Treesdale, Inc., 418 F.3d 330, 344 (3d Cir. 2005)); Century Sur. Co. v. QSC Painting, Inc., 2010 WL 891245, at *7 (W.D. Pa. Mar. 8, 2010) ("Mere assertions that a party expected coverage will not ordinarily defeat unambiguous policy language excluding coverage.").

Finally, and perhaps most practically, even if "gap" coverage had been provided, such coverage would not apply to the alleged wrongful act at issue. Plaintiff repeatedly argues that Biggio and First Indemnity had the authority to issue a policy that "picks up when [an insured's] old policy ends," which would be August 18, 2007—the last date of coverage under the Philadelphia Insurance Companies policy. (Biggio Dep. 35:15–16.) Taking Plaintiff's argument as true, Biggio and First Indemnity could have issued a policy to Plaintiff with an effective coverage date of August 18, 2007—the date on which Plaintiff's policy with Philadelphia Insurance Companies ended. Moreover, even if Biggio should have inserted an "effective coverage" date and corresponding "retroactive date" of July 27, 2007—the date on which Plaintiff submitted his first application—Plaintiff <u>still</u> would not have been covered for the alleged wrongful act at issue, which was alleged to have occurred on July 5, 2007. In reality, Plaintiff does not complain about a "gap" in coverage because closing the "gap" would still not have provided coverage for his alleged malpractice, which occurred on July 5, 2007. Rather, what Plaintiff now seeks is a determination that he was entitled to full, unrestricted prior acts coverage through his policy with Defendants. There is simply an absence of any record evidence from which a reasonable fact finder could conclude that Plaintiff reasonably expected to be covered by Defendants for acts occurring during Plaintiff's previous policy period with Philadelphia Insurance Companies.

In sum, even when viewed in the light most favorable to Plaintiff, consideration of the "reasonable expectations" doctrine does not warrant deviation from the plain language of the policy. All of the notices Plaintiff received regarding the commencement of his coverage were consistent, conspicuous, and conformed to the requests he affirmatively made in his application—the submission of which post-dated his alleged telephone conversation with Biggio.

The Third Circuit has cautioned that the reasonable expectations doctrine should only be applied in "very limited circumstances." Liberty Mut. Ins. Co., 418 F.3d at 344. As a matter of law, I find that this case does not present such circumstances.[10]

### D.  *Plaintiff's Professional Negligence Claim*

As noted *infra*, Plaintiff only included one count in his Amended Complaint, but advances multiple theories of liability: "Breach of Contract (Simple and Professional) / Unjust Enrichment / Quasi-Contract / Promissory Estoppel." (Am. Compl. ¶¶ 47–49.) In their motion for summary judgment, the First Indemnity Defendants appear to have construed Plaintiff's "professional" breach of contract claim as one sounding in professional negligence, and Plaintiff responded accordingly. (First Indem. Mot. Summ. J. 11; Pl.'s Resp. 9.) Thus, in addition to the "reasonable expectations" doctrine, the First Indemnity Defendants have argued that Plaintiff's "case" fails as a matter of law because he failed to produce an expert report regarding Andrew Biggio's conduct falling below the appropriate standard of care for an insurance broker/agent, which is ordinarily required under Pennsylvania law.

Plaintiff alleges in his Amended Complaint, and repeatedly argues in his briefs, that Biggio was an insurance expert who deviated from First Mercury's insurance guidelines and the initial marketing solicitation that Plaintiff received, and that Plaintiff relied on Biggio's expert advice in purchasing the LPL policy. (Am. Compl. ¶¶ 33, 40.) Accordingly, I too will construe Plaintiff's allegations regarding Biggio and his status as an expert as a claim sounding in professional negligence, rather than a breach of contract. See Zokaites Contracting Inc. v. Trant

---

[10] "In a breach of contract action against a professional, the professional's liability must be based upon the terms of the contract." Zokaites Contracting Inc. v. Trant Corp., 968 A.2d 1282, 1287 (Pa. Super. 2009). Because the plain language of the insurance policy excluded coverage for Plaintiff's alleged wrongful act, and because Plaintiff did not have a reasonable expectation of coverage, to the extent Plaintiff advances a "professional breach of contract" claim against Biggio, it too fails as a matter of law based on my analysis above. In any event, as will be discussed below, Plaintiff's allegations regarding Andrew Biggio's status as an expert are more appropriately characterized as a claim sounding in professional negligence.

Corp., 968 A.2d 1282, 1287 (Pa. Super. 2009) ("[T]o determine whether an action is a professional negligence claim as opposed to another theory of liability, [courts] must examine the averments made in the complaint…. The substance of the complaint rather than its form is the controlling factor to determine whether the claim against a defendant sounds in professional negligence or contract."); see also New York Cent. Mut. Ins. Co. v. Edelstein, 2015 WL 412519, at *6 (M.D. Pa. Jan. 30, 2015), aff'd sub nom. New York Cent. Mut. Ins. Co. v. Edelstein, 637 F. App'x 70 (3d Cir. 2016) ("The court agrees … that the allegations in plaintiffs' second amended complaint do not establish a … malpractice breach of contract claim since plaintiffs fail to adequately allege a breach of a specific instruction or provision of the agreement of the parties. Rather, … plaintiffs' … malpractice claims are based on failure of defendants to abide by the relevant professional standard of care.").[11]

No party addressed the issue of whether or not Plaintiff's professional negligence claim was filed within the applicable statute of limitations. As such, pursuant to Federal Rule of Civil Procedure 56(f), I ordered the parties to submit supplemental briefing on this issue. Both sets of Defendants submitted detailed briefs arguing that this claim is barred by Pennsylvania's two-year statute of limitations for professional negligence claims. (See Doc. Nos. 87, 88.) Plaintiff's cursory brief did not address his professional negligence claim or the applicable statute of limitations, nor did he file a response to either of the Defendants' briefs. (Doc. No. 86.)

---

[11] Additionally, I note that Plaintiff filed a "Certificate of Merit as to Andrew Biggio" shortly after commencing this lawsuit. (Doc. No. 4.) See Smith v. Friends Hosp., 928 A.2d 1072, 1074–75 (Pa. Super. 2007) ("A certificate of merit must be filed … within sixty days after the filing of the complaint in any action asserting a professional liability claim based upon an allegation that a licensed professional deviated from an acceptable professional standard.") (citing Pa. R. Civ. P. 1042.3(a)) (internal quotations and emphasis omitted). In the Certificate of Merit, Plaintiff certified that an appropriate licensed professional supplied a written statement that there "exists a reasonable probability that the care, skill or knowledge exercised by … Andrew Biggio … fell outside acceptable professional standards[.]" (Doc. No. 4.) This further supports my conclusion that Plaintiff's allegations concerning Biggio sound in tort rather than contract. See Knopick v. Downey, 963 F. Supp. 2d 378, 390 (M.D. Pa. 2013) (recognizing that a plaintiff may not "repackage" a negligence-based malpractice claim into one for breach of contract to avoid the statute of limitations).

Federal courts sitting in diversity treat statutes of limitations as substantive, and therefore are bound by the applicable state law. Here, Pennsylvania supplies the substantive law. As such, Plaintiff's claim for professional negligence is governed by a two-year statute of limitations. See Cooper v. Sirota, 37 F. App'x 46, 48 (3d Cir. 2002); M & M High, Inc. v. Essex Ins. Co., 2002 WL 31681995, at *4 (Pa. Ct. Com. Pl. Nov. 18, 2002); Estate of Goldberg ex rel. Goldberg v. Nimoityn, 2014 WL 6908013, at *6 (E.D. Pa. Dec. 9, 2014) (citing 42 Pa. Cons. Stat. § 5524).[12]

"Pennsylvania favors strict application of the statutes of limitation." Wachovia Bank, N.A. v. Ferretti, 935 A.2d at 572. And as a general rule in Pennsylvania, "the statute of limitations begins to run as soon as the right to institute and maintain a suit arises," (i.e., upon the occurrence of the alleged breach of duty). Estate of Goldberg, 2014 WL 6908013, at *6. However, the "discovery rule" may serve to toll the limitations period if the injury alleged was not readily ascertainable at the time of the breach. Knopick v. Connelly, 639 F.3d 600, 607 (3d Cir. 2011). "Where the discovery rule does apply, [a limitations period] begins to run where the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and its cause." Id. at 607. "[T]he point of time at which the injured party should reasonably be aware that he … has suffered an injury is generally an issue of fact to be determined by the jury. . . . Only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitation period be determined as a matter of law." Id. at 611.

Here, Biggio and First Indemnity issued the initial policy to Plaintiff on October 24, 2007. Thus, any breach by Biggio would have occurred on this date. Nevertheless, Plaintiff claims that he first became aware of the "gap" in coverage when First Mercury denied coverage

---

[12] To the extent Plaintiff advanced a "simple" negligence claim, this too would be barred by Pennsylvania's two-year statute of limitations. Montanya v. McGonegal, 757 A.2d 947, 950 (Pa. Super. 2000) ("In Pennsylvania, a cause of action for negligence is controlled by the two-year statute of limitations set forth in 42 Pa. C. S. A. § 5524(2).") (quoting Hubert v. Greenwald, 743 A.2d 977, 981 (Pa. Super. 1999)).

on August 7, 2009, nearly two years later. In fact, Plaintiff expressly states in his response in opposition to First Mercury and State National's statement of material facts that he "only *discovered* the lapse in coverage when Defendants … denied coverage." (Pl.'s Resp. in Opp. to First Merc. & State Nat'l SOF at 6 ¶ 20.) By Plaintiff's own admission, he discovered his alleged injury on August 7, 2009. Viewed in the light most favorable to Plaintiff, and giving him every benefit of the doubt under application of Pennsylvania's "discovery rule," his claim for professional negligence expired, at the absolute latest, on August 7, 2011—two years before he filed his initial complaint in the case before me.[13] Therefore, Plaintiff's claim for professional negligence fails as a matter of law because it is barred by Pennsylvania's two-year statute of limitations. As such, judgment will be entered in favor of Defendants on this claim.

### E.   *Plaintiff's Alternate Theories of Liability*

As noted, Plaintiff included only one count in his Amended Complaint. However, he advanced multiple theories of liability, including: unjust enrichment, quasi-contract, and promissory estoppel. Like Plaintiff's professional negligence claim, Defendants did not move for summary judgment on any of these alternate theories of liability. As such, in my Order directing the parties to submit supplemental briefing pursuant to Federal Rule of Civil Procedure 56(f), I further instructed the parties to address these three claims, and brief whether judgment was appropriate on any or all of them. Again, both sets of Defendants responded by arguing that each of Plaintiff's alternate theories of liability fails as a matter of law, and cited ample authority in

---

[13] In his Amended Complaint, Plaintiff avers that, prior to receiving the August 7, 2009 letter from First Mercury denying coverage, he did "not know nor did he have reason to suspect that Defendants left him with a gap in coverage[.]" (Am. Compl. ¶¶ 19–20.) Yet, Plaintiff also alleges that it was "only after being denied coverage by Philadelphia Insurance Company" on December 31, 2009 that he "realized and could have only then realized that Defendants had failed to procure adequate legal malpractice coverage for him[.]" (Id. at ¶ 22.) Despite this contradiction regarding when Plaintiff learned of his "gap" in coverage, even if I were to use the later date of December 31, 2009 for purposes of measuring the limitations period, Plaintiff's claim for professional negligence would still be barred by Pennsylvania's two-year statute of limitations.

support of their arguments. Plaintiff did not specifically address any of these three claims, nor did he submit a response to either set of Defendants' briefs.

i.  Unjust Enrichment / Quasi-Contract

"An action based on unjust enrichment is an equitable action which sounds in quasi-contract, a contract implied in law." Sevast v. Kakouras, 915 A.2d 1147, 1153 n. 7 (Pa. 2007). To recover under the equitable doctrine of unjust enrichment (otherwise known as "quasi-contract") a plaintiff must establish the following: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation of such benefit(s) by the defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Kia v. Imaging Scis. Int'l, Inc., 735 F. Supp. 2d 256, 269 (E.D. Pa. 2010).

"The mere fact that one party benefits from the act of another is on its own insufficient to justify restitution. There must also be an injustice in permitting the benefit to be retained without compensation." Pender v. Susquehanna Twp., 933 A.2d 1085, 1094 (Pa. Commw. Ct. 2007); see also Torchia on Behalf of Torchia v. Torchia, 499 A.2d 581, 582 (Pa. Super. 1985) (recognizing that a plaintiff "must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that it would be unconscionable for her to retain") (internal quotations omitted). "The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, [a court's] focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." Limbach Co., LLC v. City of Philadelphia, 905 A.2d 567, 575 (Pa. Commw. Ct. 2006).

Plaintiff submitted an insurance application—after his conversation with Biggio—requesting that his coverage be effective on October 1, 2007. Plaintiff received a quote outlining

the premium/cost associated with a policy possessing an effective coverage date of October 1, 2007. Plaintiff paid his premium without objection, and received a policy with an effective coverage date of October 1, 2007. Even after Defendants denied coverage, Plaintiff renewed his policy with Defendants multiple times.

The undisputed facts reflect that the only benefit Plaintiff conferred upon First Mercury and State National was the premium he paid. Payment of his premium secured one year of malpractice coverage via the insurance policy at issue. Additionally, the First Indemnity Defendants argue that the only benefit they received was a commission for facilitating Plaintiff's purchase of the insurance policy through First Mercury and State National. In other words, Biggio and First Indemnity retained a percentage of the premium as payment for their services. Again, in exchange for their retention of this benefit, the First Indemnity Defendants facilitated the securing of malpractice coverage for Plaintiff. Plaintiff has not disputed the characterization of either of these benefits, nor has he argued that either of the benefits retained by the respective Defendants was excessive, unreasonable, or unconscionable.

I conclude that the undisputed facts of this case do not present a situation in which any reasonable fact finder would conclude that any Defendant accepted and retained a benefit under circumstances that would be inequitable or unconscionable to retain that benefit without payment of value to Plaintiff. Kia, 735 F. Supp. 2d at 269. In other words, as a matter of law, none of the Defendants were unjustly enriched, and Plaintiff's claims for quasi-contract and unjust enrichment fail as a matter of law.[14]

---

[14] Additionally, while a party may generally advance alternative theories of liability (but may not recover on both), it is well-settled that a plaintiff may not maintain a claim for unjust enrichment under a quasi-contract theory of recovery where "the relationship between the parties is founded upon [a] written agreement[.]" Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 625 (E.D. Pa. 2010); see also Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 896 (Pa. Super. 2011) ("It is long-settled that the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship between parties is founded on a written agreement or express contract.") (quotations omitted). First Mercury and State National argue that Plaintiff's claims fail against them because their relationship was strictly

ii.   <u>Promissory Estoppel</u>

"The doctrine of promissory estoppel allows a party, under certain circumstances, to enforce a promise even though that promise is not supported by consideration." <u>Cornell Companies, Inc. v. Borough of New Morgan</u>, 512 F. Supp. 2d 238, 266 (E.D. Pa. 2007). To establish a claim for promissory estoppel in Pennsylvania, a plaintiff must prove the following: (1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise. <u>Id.</u>; <u>Sullivan v. Chartwell Inv. Partners, LP</u>, 873 A.2d 710, 718 (Pa. Super. 2005).

Courts have observed that "[p]romissory estoppel requires that plaintiffs *reasonably rely* on a … promise to their detriment." <u>Josephs v. Pizza Hut of Am., Inc.</u>, 733 F. Supp. 222, 226 (W.D. Pa. 1989), <u>aff'd</u>, 899 F.2d 1217 (3d Cir. 1990) (emphasis added); <u>see</u> <u>also</u> <u>Shoemaker v. Commonwealth Bank</u>, 700 A.2d 1003, 1008 (Pa. Super. Ct. 1997) (recognizing that a factor in determining whether injustice can be avoided only by enforcing the promise is the "reasonableness of the promisee's reliance").

Assuming that Biggio did in fact promise Plaintiff that he would be left with "no gaps" in coverage, Plaintiff has offered no explanation, nor has he pointed to any record evidence, regarding why he changed course and requested an effective coverage date of October 1, 2007 <u>after</u> Biggio allegedly made this promise. For the same reasons outlined above with respect to Plaintiff's lack of a reasonable expectation of coverage, it would be "patently unreasonable" for Plaintiff to rely on a promise only to thereafter request coverage in direct contravention to that promise. For this reason, Plaintiff's promissory estoppel claim fails as a matter of law. <u>See</u>

---

founded upon the insurance policy—a written agreement. Plaintiff does not dispute that the LPL insurance policy at issue constituted a legally enforceable contract. Hence, Plaintiff's claims fail against First Mercury and State National for the additional reason that their relationship was founded upon an express written agreement.

<u>Luther v. Kia Motors Am., Inc.</u>, 676 F. Supp. 2d 408, 422–23 (W.D. Pa. 2009) (recognizing that, as a matter of law, "[i]t is not reasonable for experienced business people to make business decisions based on oral representations in contravention of written statements.").

IV.   **<u>CONCLUSION</u>**

The plain language of the insurance policy at issue excludes coverage for the alleged wrongful act giving rise to the malpractice complaint filed against Plaintiff, and the "reasonable expectations" doctrine is inapplicable. Therefore, Defendants' respective motions for summary judgment will be granted as to Plaintiff's breach of contract claim. Additionally, Plaintiff's claim for professional negligence is barred by Pennsylvania's two-year statute of limitations. As such, pursuant to Federal Rule of Civil Procedure 56(f), I will enter judgment in favor of Defendants on this claim. Finally, Plaintiff's alternate theories of liability—unjust enrichment, quasi-contract, and promissory estoppel—all fail as a matter of law, and pursuant to Federal Rule of Civil Procedure 56(f), I will enter judgment in favor of Defendants on these three claims.

An appropriate Order follows.